IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WESTERN RADIO SERVICES
COMPANY, INC.,

        Plaintiff,

    v.

JOHN ALLEN, Deschutes National
Forest Supervisor; KATE KLEIN,
Ochoco National Forest
Supervisor; KEVIN LARKIN, Bend-
Fort Rock District Ranger;
SLATER R. TURNER, Lookout
Mountain/Crooked River National
Grassland District Ranger; RICK
WESSLER, Special Use Permits
(Bend/Fort Rock Ranger District);
LISA DILLEY, Special Use Permits
(Bend/Fort Rock Ranger District);
HEIDI SCOTT, Special Use Permits,
Ochoco National Forest; KAREN
BRAND, Special Use Permits,
Ochoco National Forest; KENT
CONNAUGHTON, Regional Forester;
MAUREEN HYZER, Acting Regional
Forester; and UNITED STATES
FOREST SERVICE;

        Defendants.

Case No. 6:14-00747-AA
OPINION AND ORDER

1 — OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Western Radio Services Company, Inc., (Western Radio) filed suit under the Administrative Procedures Act (APA), 5 U.S.C. § 706, alleging that the United States Forest Service (Forest Service) took arbitrary and capricious action and unlawfully withheld action in violation of 16 U.S.C. § 497. Western Radio's claims arise from ongoing disputes between it and the Forest Service regarding Western Radio's telecommunications facilities on National Forest lands.[1] The Forest Service denies Western Radio's claims and asserts counterclaims for trespass and unjust enrichment.

The Forest Service now moves for summary judgment on Western Radio's APA claims and its counterclaims; plaintiff likewise moves for summary judgment on the Forest Service's counterclaims. Further, the Forest Service again moves for a preliminary injunction requiring Western Radio to remove equipment and facilities from the Gray Butte telecommunications site. The Forest Service's motions for summary judgment and preliminary injunctive are granted, and plaintiff's motion is denied.

<u>**BACKGROUND**</u>

Western Radio operates telecommunication facilities within National Forest lands pursuant to permits and leases authorized by the Forest Service. At three telecommunications sites – Gray Butte, Sugar

---

[1] Western Radio also alleged claims against several Forest Service employees for violations of its First Amendment and Equal Protection rights pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). However, the court dismissed these claims in a previous opinion. <u>See</u> doc. 115.

Pine Butte, and Round Mountain - Western Radio has made improvements to the land and/or built structures such as telecommunications towers. Western Radio also has sought to establish a facility at a fourth site, South Paulina Peak. As explained in further detail below, the Forest Service either has revoked or declined to renew Western Radio's leases to maintain facilities at Gray Butte, Sugar Pine Butte and Round Mountain. The Forest Service also has denied permission for Western Radio to install communications facilities at South Paulina Peak.

On May 5, 2014, Western Radio filed this action. Western Radio alleges that the Forest Service's actions are arbitrary and capricious and constitute unreasonable interpretations of its own regulations under the APA. Western Radio also alleges that the Forest Service unlawfully withheld and unreasonably delayed action on Western Radio's various applications.

Despite the legal dispute over Western Radio's authorization to remain at Gray Butte, on July 31, 2014, Western Radio entered into a five-year lease agreement with a third-party tenant, Sureline, Inc. (Sureline) and allowed Sureline to install telecommunications equipment at its Gray Butte facility. Shortly afterward, other site users notified the Forest Service that Western Radio had not provided the required 30-day notice of new frequencies or tenants at the site, and that Sureline's operations caused interference with authorized tenants.

On November 13, 2014, the Forest Service was granted leave to amend its answer and allege counterclaims of trespass and unjust enrichment against Western Radio. The Forest Service contends that Western Radio

3 - OPINION AND ORDER

is in trespass at Sugar Pine Butte, Gray Butte and Round Mountain, that its structures and improvements are now property of the Forest Service, and that Western Radio has unjustly benefited by remaining on Forest Service lands and operating its facilities without authorization or payment of fees.

**DISCUSSION**

**A.  Plaintiff's APA Claims**

Western Radio alleges violations of 16 U.S.C. § 497(c), which authorizes the Forest Service to permit the use and occupancy of public lands for industrial or commercial purposes. Compl. at 2.[2] However, 16 U.S.C. § 497 does not contain a provision for judicial review; therefore, a plaintiff alleging that an agency failed to comply with a statute must bring its claims under the APA. City of Sausalito v. O'Neill, 386 F.3d 1186, 1205 (9th Cir. 2004). Here, Western Radio alleges that the Forest Service unlawfully withheld action on a development proposal and unlawfully revoked or declined to renew its telecommunication leases.

Under § 706(1) of the APA, a court can compel an agency to act only if the action is discrete and required by law. 5 U.S.C. § 706(1); Norton

---

[2] In its Complaint, Western Radio mistakenly characterizes its claim as arising under the National Forest Management Act (NFMA); they do not, as plaintiff does not invoke provisions of NFMA or allege violations of a relevant forest land management plan. In response to the Forest Service's motion for summary judgment, plaintiff also attempts to invoke the Telecommunications Act of 1996 and the Federal Land Policy and Management Act. Plaintiff's Complaint does not allege violations of these statutes and the court will not consider them. Regardless, the statutory provisions cited by plaintiff do nothing more than grant federal agencies authority to grant or issue permits; they do not require specific action or impose applicable standards. 43 U.S.C. § 1761(a); 47 U.S.C. § 332.

v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004). Consequently, unless a plaintiff identifies a "clear statutory duty" with which the agency must comply, an agency's "failure to act . . . is not challengeable under the APA." ONRC Action v. Bureau Land Mgmt., 150 F.3d 1132, 1140 (9th Cir. 1998); Hells Canyon Preservation Council v. U.S. Forest Serv., 593 F.3d 923, 932 (9th Cir. 2010) (the "ability to 'compel agency action' is carefully circumscribed to situations where an agency has ignored a specific legislative command").

Under § 706(2)(A) of the APA, a reviewing court may set aside an agency action that is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation, 655 F.3d 1000, 1005 (9th Cir. 2011) (quoting 5 U.S.C. § 706(2)(A)). An agency decision is considered arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Review under the arbitrary and capricious standard is narrow, and courts give deference to an agency's construction of a statutory provision it is charged with administering. American Fed'n of Gov't Employees v. Fed. Labor Relations Auth., 204 F.3d 1272, 1274-75 (9th Cir. 2000).

Notably, a plaintiff must challenge a "final" agency action under

5 - OPINION AND ORDER

§ 706(2). <u>Oregon Natural Desert Ass'n (ONDA) v. U.S. Forest Serv.</u>, 465 F.3d 977, 982 (9th Cir. 2006). "For an agency action to be final, the action must (1) mark the consummation of the agency's decisionmaking process and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow." <u>Id.</u> (internal quotation marks and citation omitted).

The Forest Service correctly notes that Western Radio fails to submit evidence that the Forest Service's actions violated § 497 in any way, and therefore, Western Radio cannot prevail on its APA claims. <u>See Or. Nat. Res. Council v. Thomas</u>, 92 F.3d 792, 797, nn.10 & 11 (9th Cir. 1996) ("[T]here can be no 'arbitrary and capricious' review under APA § 706(2)(A) independent of another statute."). While I find the Forest Service's argument compelling, I nonetheless review the substance of Western Radio's claims in the event they suffice to allow for APA review.

1. <u>Gray Butte</u>

    a. <u>Rejection of New Lease</u>

In 1999, the Forest Service granted Western Radio a multi-year communications use lease for the Gray Butte site. GB 347-53. The lease terminated on December 31, 2006. GB 348. Afterward, the parties operated on a yearly basis under the terms of the lease.

In December 2012, the Forest Service formally notified Western Radio of numerous compliance problems with its lease. GB 1268-71. The Forest Service also described specific actions Western Radio must take to "avoid further action." GB 1269-70. On December 28, 2012, the Forest Service notified Western Radio that its tenancy at Gray Butte would not

be authorized beyond December 2013. GB 1280-81. In February 2013, Western Radio submitted a renewal application for Gray Butte. GB 1285-1316, 1486-1520.

On December 31, 2013, the Forest Service rejected Western Radio's request for a new lease and stated that it would no longer tolerate Western Radio's "hold-over" status. GB 1655-56. On January 30, 2014, the Forest Service notified Western Radio that its Gray Butte facilities must be removed by July 2014. GB 1692-95; see also 36 C.F.R. § 251.60(i). To date, Western Radio has not removed its facilities from Gray Butte. Rather, after the Forest Service made clear that Western Radio's authorization to maintain facilities at the site was terminated, Western Radio entered into a tenancy agreement with Sureline.

Western Radio argues that the Forest Service acted arbitrarily and capriciously when it rejected Western Radio's request for a new lease, and that it received no administrative process or opportunity to appeal. I disagree. "Under the APA, an agency cannot lawfully suspend or revoke a license unless the licensee has been given written notice of the facts warranting the action and an opportunity to demonstrate compliance with the requirements 'before the institution of agency proceedings.'" Fence Creek Cattle Co. v. U.S. Forest Serv., 602 F.3d 1125, 1134 (9th Cir. 2010) (quoting 5 U.S.C. § 558(c)).

Here, the Forest Service did not suspend or revoke Western Radio's Gray Butte lease; rather, the Forest Service denied the request for a new lease. Regardless, the Forest Service provided Western Radio with notice of non-compliance issues and an opportunity for compliance; it

subsequently found that Western Radio remained out of compliance with several terms and conditions. See, e.g., GB 1524-26, 1592-95. Western Radio contested the non-compliance issues in August 2013, and the Forest Service responded to each issue. GB 1476-77, 1592-95. The record reflects that Western Radio cured several items of non-compliance but failed to correct the remaining items despite notice and warnings to do so. GB 1525-26, 1592-95, 1647-54.

Further, the Forest Service explained its decision. GB 1655-56. The Forest Service explained that it would not renew the lease due to: 1) Western Radio's failure to demonstrate the technical and financial capability to operate and maintain the equipment in compliance with applicable terms and conditions; 2) Western Radio's lack of compliance in the Ochoco National Forest; 3) a district court decision finding that Western Radio trespassed and breached its lease at the Walker Mountain Communication site; 4) Richard Oberdorfer's conviction under 36 C.F.R. § 261.10(a) for constructing and maintaining a structure without authorization;[3] and 5) the revocation of Western Radio's lease at the Walker Mountain site. Id.

Finally, Forest Service regulations do not allow for an appeal when the agency declines to renew a lease, unless the lease "specifically provides for renewal." 36 C.F.R. § 214.4(c)(5); see also id. § 214.5 (lease holders "may not appeal" decisions that are "not expressly set forth in § 214.4"). Here, Western Radio's lease stated it was "not renewable." GB 348. Therefore, Western Radio had no appeal right.

---

[3] Richard Oberdorfer owns and operates Western Radio.

Given the record before the court, I cannot find that the Forest Service acted arbitrarily or capriciously in rejecting Western Radio's request for a new lease at Gray Butte.

### b. Yellow Knife Billing

Yellow Knife Wireless is a tenant of Western Radio at the Gray Butte site. Yellow Knife equipment was added to Western Radio's Gray Butte structures in the summer of 2011, GB 1700, but Western Radio did not disclose Yellow Knife on its October 1, 2011 inventory listing. GB 1228-29. The inventory listing required the disclosure of "all occupants" who had "a formal or informal agreement to lease space" at Western Radio's facilities as of September 30, 2011. GB 1228.

In September 2013, the Forest Service back-billed Western Radio about $552 in rent for the Yellow Knife's occupancy. GB 1556-59. On appeal, the Forest Supervisor and the Regional Forester affirmed the decision. GB 1696-1701, 1705.

Western Radio argues that the back-billing was arbitrary and capricious, because Yellow Knife had installed equipment prior to September 30, 2011 but had not completed installation of all facilities as of that date. Regardless, Western Radio did not include Yellow Knife in its inventory listing, and it failed to respond to the Forest Service's requests to update the inventory listing. See GB 1701. Thus, it was well within the Forest Service's discretion to bill Western Radio for such occupancy.

### c. Trespass Notice

On January 30, 2014, the Forest Service notified Western Radio that

9 - OPINION AND ORDER

it was in trespass at Gray Butte and that its facilities must be removed by July 31, 2014. GB 1692-95; 36 C.F.R. § 251.60(i).

Western Radio complains that it had no administrative appeal regarding this notice. However, no regulation allows an administrative appeal of a trespass notice. 36 C.F.R. § 214.4. Regardless, Western Radio filed this suit to challenge the Forest Service's decision before the deadline to remove its facilities, and the Forest Service filed suit under trespass. Thus, Western Radio has been provided with the process it is due through this court action.

    2. Sugar Pine Butte

        a. Lease Revocation

In 2004, Western Radio obtained a twenty-year lease authorizing it to operate facilities at Sugar Pine Butte, including a tower and buildings. SuP 52-82, 597.

In early 2013, the Forest Service issued Western Radio two notices identifying compliance problems with the terms of its lease. SuP 535, 627. On October 28, 2013, the Forest Service notified Western Radio of continued compliance problems. SuP 771-79.

On January 9, 2014, the Forest Service again notified Western Radio of continued non-compliance issues with its lease, explained the grounds for lease revocation, and provided Western Radio another opportunity to correct the noted problems. SuP 854-57.

On February 5, 2014, the agency issued a final warning. SuP 824. According to the Forest Service, Western Radio did not correct the compliance problems. Consequently, on February 14, 2014, the Forest

10 - OPINION AND ORDER

Service notified Western Radio that it was revoking its communication use lease, effective immediately. SuP 852-53.

On March 28, 2014, Western Radio filed an administrative appeal of the decision to revoke its lease. SuP 899. On June 26, 2014, the Forest Service affirmed the decision with a seven-page explanation. SuP 1183, 1185-91. On July 23, 2014, the Regional Forester affirmed the decision after an additional "discretionary" review. SuP 1194. Western Radio contends that the Forest Service acted arbitrarily and capriciously in revoking its lease. I disagree.

As described above, the Forest Service provided Western Radio with several notices of noncompliance with lease terms and afforded Western Radio an opportunity to cure its compliance issues. Specifically, the Forest Service notified Western Radio of its failure to supply an inventory of site users along with their categories of use. SuP 771-78, 854. Western Radio refused to correct its inventory, and in January 2014 the Forest Service provided another non-compliance notice. SuP 854-57. This notice explained the grounds for lease revocation and allowed Western Radio thirty days in which to cure the problem. SuP 854-57. On February 5, 2014, the agency issued a final warning. SuP 824. Western Radio failed to cure the problem, instead arguing about the requirement, and the Forest Service revoked the lease. SuP 825, 852-53. On administrative appeal, the agency provided a detailed, seven-page explanation for revoking the lease. SuP 1185-91. Given Western Radio's repeated failures to cure the deficiency identified by the Forest Service, its decision was not arbitrary or capricious.

Western Radio also argues that revocation of its lease was arbitrary, because Western Radio previously had settled a 2011 dispute with the Forest Service. SuP 167-68. I fail to discern how an earlier resolution between the parties somehow prevents the Forest Service from enforcing Western Radio's compliance with lease provisions. Regardless, the Forest Service explained why the prior agreement was inapplicable to Western Radio's present lack of compliance. SuP 824.

Finally, Western Radio argues that the District Ranger lacked authority to revoke the lease. Under the terms of the lease, revocation must be instituted by an "Authorized Officer," and the District Ranger is an "Authorized Officer." SuP 52, 55 ("unless otherwise indicated such authority may be exercised by the Forest Supervisor or District Ranger"). Therefore, the revocation by the District Ranger complied with the terms of the lease. See United States v. Western Radio Services Co., Inc., 2014 WL 1679821, at * 8-9 (D. Or. April 28, 2014). Moreover, the Forest Supervisor affirmed the District Ranger's decision to revoke the lease. Id. at *9; SuP 1183-84.

b. Permit for Agency-Owned Tower

In 2004, Western Radio obtained a special use permit that allowed Western Radio to use a tower owned by the Forest Service on Sugar Pine Butte. SuP 84-93. The permit expired by its terms on December 31, 2013. SuP 85.

On November 20, 2013, the Forest Service informed Western Radio that it would not renew Western Radio's permit after its expiration on December 31, 2013. SuP 798. The Forest Service noted that Western Radio

did not have any antennas on the agency-owned tower and had not requested a new permit. Id. Western Radio argues that the failure to renew the permit was arbitrary and capricious. I disagree.

As noted, Western Radio had no antennas on the tower covered by the permit and had not requested a new permit prior to July 2013, which barred the renewal of the permit. SuP 85 ("If the holder desires issuance of a new permit after expiration the holder shall notify the authorized officer in writing not less than six (6) months prior to the expiration date of this permit."); SuP 798. Moreover, the terms of the permit state that its renewal "is at the absolute discretion of the Forest Service." SuP 85.

Finally, Western Radio argues that it received no process because its administrative appeal was dismissed. However, Western Radio was not entitled to an appeal under 36 C.F.R. § 214.4; SuP 821.

c. Development Proposal

In July 2011, Western Radio submitted a proposal to develop its operations at Sugar Pine Butte and replace the Forest Service-owned tower with a new Western Radio tower. SuP 171-79. In April 2012, Western Radio submitted revisions to its proposal. SuP 332-33. The Forest Service delayed ruling on Western Radio's proposal because of Western's Radio's non-compliance with its lease and agency review of its proposal required amendment of the Sugar Pine Butte site management plan regarding power limits. SuP 779, 789.

By April 2013, the Sugar Pine Butte management plan was amended to exempt cellular service from the site power limit. SuP 570-601,

13 – OPINION AND ORDER

689-93. However, Western Radio's proposal remained on hold. SuP. 708. In September 2013, the Forest Service told Western Radio that it intended to make a "competitive interest" determination for Sugar Pine Butte before further reviewing Western Radio's proposal. SuP 753.

On February 21, 2014, the Forest Service notified Western Radio that there was a competitive interest in constructing and/or managing a communications facility at Sugar Pine Butte, and that the Forest Service could not accept Western Radio's site development proposal. SuP 858. Western Radio was also instructed to inform the Forest Service if it wanted the agency to consider the 2011 proposal as an indication of Western Radio's interest. Id.

Western Radio first contends that the Forest Service unlawfully failed to review its development proposal, and that it should be compelled to do so. However, plaintiff fails to identify a clear statutory duty requiring the Forest Service to review the proposal, and I decline to compel such a review under § 706(1).

Plaintiff also suggests that the Forest Service acted arbitrarily and capriciously when it rejected Western Radio's proposal for expansion and development of its facilities. However, plaintiff concedes that the Forest Service made no "final decision" regarding its proposal, a requirement for review under § 706(2). Regardless, the Forest Service ultimately declined to accept Western Radio's development proposal; to the extent this constitutes a "final decision" for purposes of the APA, it was neither arbitrary nor capricious.

When a party submits an unsolicited proposal, the Forest Service

may determine whether there is "competitive interest" in such development. 36 C.F.R. § 251.58(c)(3)(ii). If the Forest Service determines such a competitive interest exists, the agency issues a public prospectus. Id.; P 4980. Here, the Forest Service determined that there was competitive interest in development at Sugar Pine Butte. SuP 858. Therefore, the Forest Service was authorized to issue a development prospectus before considering Western Radio's proposal. Notably, Western Radio did not respond to the prospectus issued by the Forest Service. Regardless, the Forest Service's decision is supported by the record.

### 3. Round Mountain

In 1996, the Forest Service granted Western Radio a communications use lease for the Round Mountain site. RM 2384-90. The lease terminated in 2001, RM 2385, and the parties continued on a yearly basis under the terms of the lease.

In December 2012, the Forest Service formally notified Western Radio of compliance problems. RM 3501-03. On December 28, 2012, the Forest Service notified Western Radio that its tenancy at Round Mountain would not be authorized beyond December 31, 2013. RM 3507-08.

In January 2013, Western Radio requested a new lease, and in April 2013, the Forest Service rejected its request. RM 3511-12, 3547. In August 2013, Western submitted a second request. RM 3566-88. However, the Forest Service found that Western Radio remained out of compliance with several terms and conditions of its lease. See, e.g., RM 3592-3604, 3653-59, 3672-75.

On December 31, 2013, the Forest Service rejected Western Radio's proposal for a new lease and stated that it was no longer tolerating Western Radio's "hold-over" status. RM 3683-84 On January 30, 2014, the Forest Service informed Western Radio that its Round Mountain facilities must be removed by July 2014. RM 3708-11. As with the facilities at Gray Butte, Western Radio has not removed its facilities at Round Mountain.

Plaintiff again argues that the Forest Service's decision to rejects its lease request was arbitrary and capricious. However, the Forest Service provided a detailed rationale for its decision not to continue doing business with Western Radio, including its lease non-compliance at Round Mountain and illegal conduct by Western Radio and Mr. Oberdorfer at Walker Mountain. RM 3501-03, 3507-08, 3592-604, 3653-59, 3672-82, 3683-84. Western Radio also complains that the Forest Service did not provide an administrative appeal. As the Forest Service informed Western Radio in December 2013, administrative appeal is available only if a lease "specifically provides for renewal." 36 C.F.R. § 214.4(c)(5); RM 3684. Here, Western Radio's lease stated it was "not renewable." RM 2385. Therefore, Western Radio was not entitled to an administrative appeal.

### 4. South Paulina Peak

South Paulina Peak is within the Newberry National Volcanic Monument in the Deschutes National Forest. See SoPP 1213, SoPP 1237. Pursuant to the Deschutes Forest Plan, neither South Paulina Peak nor North Paulina Peak is available for telecommunications site development. P 3550, 3557 (South Paulina Peak sites are "not available

for development"). Nevertheless, Western Radio repeatedly has requested authorization to construct communications facilities at South Paulina Peak. See, e.g., SoPP 1213-14 (1998 denial); SoPP 1237-38 (2007 denial); SoPP 1242-45 (2009 denial).

Relevant to this lawsuit, in January 2013, Western Radio again sought authorization to build a relay station facility at South Paulina Peak to augment coverage from Sugar Pine Butte and restore a service area. SoPP 1341-49. On March 8, 2013, the Forest Service denied Western Radio's proposal as inconsistent with the provisions of the Deschutes Forest Plan and the Newberry National Volcanic Monument management plan. SoPP 1350-51; see also SoPP 1338-40 (Oct. 2012 letter to Western Radio denying a request for a pre-proposal meeting).

Western Radio alleges that the Forest Service arbitrarily and capriciously rejected its application. I disagree.

Given that the Deschutes Forest Plan precludes development, and, presumably, the construction of communications facilities on South Paulina Peak, the Forest Service's denial of Western Radio's proposal was neither arbitrary nor capricious. Plaintiff nonetheless argues that the Forest Plan's provisions were replaced by the Newberry Monument Plan. Pl.'s Response at 19. However, in designating the Monument, Congress indicated that it was not reconsidering, amending, or revising the Forest Plan. SoPP 1157. Western Radio also contends that the plan governing South Paulina Peak development provides for review of "new applications" on a "case-by-case basis." However, I find no inconsistency between this provision and the Forest Service's denial

of Western Radio's application; the Forest Service reviewed Western Radio's application and denied it as inconsistent with the lack of development at South Paulina Peak.

Western Radio also argues that the facility it proposed is similar to those already approved or in use within the Newberry National Monument area. Specifically, Western Radio asserts that the United States Geological Service (USGS), the United States Air Force, and the Soil Conservation Service (SCS) either had or have operations in the Monument area. However, as the Forest Service points out, the USGS does not operate facilities on South Paulina Peak, and the USGS facility is intended to provide timely public warnings of volcanic activity within the Monument. P 5144. Further, as Western Radio itself indicated in 1985, the Air Force and SCS ceased any operations at Paulina Peak by the early 1980s. SoPP 252.

Finally, plaintiff asserts that CenturyLink operates telecommunication facilities in the Monument area. However, the only evidence plaintiff cites for this assertion is the extra-record declaration of Richard Oberdorfer, a declaration the court declines to consider in the context of plaintiff's APA claims. See Lands Council v. Powell, 395 F.3d 1019, 1029-30 (9th Cir. 2004). Regardless, the Forest Service denies that CenturyLink has a lease or permit to operate on South Paulina Peak, and no evidence in the record suggests otherwise. Accordingly, plaintiff's claim fails.

**B.  The Forest Service's Counterclaims**

In its counterclaims, the Forest Service alleges that Western Radio

is trespassing at the Gray Butte, Sugar Pine Butte and Round Mountain sites and has been unjustly enriched by continuing its operations without authorization. The Forest Service also alleges that Western Radio has not paid fees for 2014 and 2015 while receiving monthly payments from tenants and customers. Thus, the Forest Service maintains Western Radio has benefited financially by impermissibly continuing its business operations on Forest Service land. The parties move for summary judgment on the Forest Service's counterclaims.

### 1. Trespass Counterclaim

The Forest Service contends that if Western Radio does not prevail on its APA claims, it is in trespass at the Gray Butte, Sugar Pine Butte and Round Mountain sites. I agree.[4]

---

[4] In seeking summary judgment on the Forest Service's counterclaims, Western Radio argues that the agency's sole remedy lies under the APA. Western Radio misapprehends the nature of the Forest Service's claims as well as the APA's scope. The APA provides for judicial review of agency action; it is not a mechanism for review of agency claims against a lessee or permittee whose authorization to remain on federal lands has expired or otherwise terminated. In similar cases, the government generally brings claims for trespass; such actions are preferred as they provide the lessee or permittee with adequate due process before the removal of unauthorized property or operations from federal lands. See, e.g., United States v. Brunskill, 792 F.2d 938 (9th Cir. 1986) (government filed suit seeking injunctive relief to vacate mining site); United States v. Moore, 2010 WL 373863 (D. Or. Jan. 28, 2010) (government filed suit for trespass and sought ejectment of property from mining site); United States v. Tracy, 2009 WL 3780936 (D. Or. Nov. 10, 2009) (government filed claims for trespass and ejectment of property from mining site).

Indeed, the Forest Service previously has brought trespass claims against Western Radio; claims that were granted on summary judgment and upheld by the Ninth Circuit long before Western Radio filed its motion for partial summary judgment in this case. See Oberdorfer v. Jewkes,

Federal and Oregon courts refer to the Restatement of Torts when considering a trespass claim. See United States v. Milner, 583 F.3d 1174, 1182 (9th Cir. 2009); Martin v. Reynolds Metals Co., 221 Or. 86, 101, 342 P.2d 790 (1959). A person is liable for trespass "if he intentionally: (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove." Restatement (Second) of Torts § 158.

Here, the Forest Service informed Western Radio that its authority to operate at Gray Butte and Round Mountain expired on December 31, 2013 and that its facilities must be removed by July 2014. The Forest Service also revoked Western Radio's lease to operate at Sugar Pine Butte as of February 14, 2014, and that decision was affirmed on July 23, 2014. Nonetheless, Western Radio remains at these sites without authorization, has not removed its facilities, and has allowed a third party to install additional equipment at Gray Butte.

As discussed above, the Forest Service's reasons for declining to renew and for revoking Western Radio's leases were neither arbitrary nor capricious. Therefore, Western Radio has no authorization to remain

---

583 Fed. Appx. 770, 774 (9th Cir. July 24, 2014) ("For similar reasons, no rational trier of fact could have found for Western Radio on the Forest Service's trespass claim based on the record before the district court. . . . The absence of a special use authorization signed by both parties . . . and the District Ranger's June 2010 letter outlining additional steps on which construction authorization was contingent, establish that Western Radio's construction exceeded the scope of any consent granted by the Forest Service."), cert. denied sub nom. W. Radio Servs. Co. v. United States, 135 S. Ct. 1901 (2015).

at those sites, and the Forest Service has established that Western Radio is in trespass at the Gray Butte, Sugar Pine Butte, and Round Mountain telecommunications sites. See Oberdorfer, 583 Fed. Appx. at 774 (affirming summary judgment on trespass claim).

The Forest Service also seeks a declaration that Western Radio's facilities have become property of the United States, because Western Radio did not remove such facilities in the time allowed by the Forest Service. The Forest Service relies on 36 C.F.R. § 251.60. This regulation provides:

> Upon revocation or termination of a special use authorization, the holder must remove within a reasonable time the structures and improvements and shall restore the site to a condition satisfactory to the authorized officer, unless the requirement to remove structures or improvements is otherwise waived in writing or in the authorization. If the holder fails to remove the structures or improvements within a reasonable period, as determined by the authorized officer, they shall become the property of the United States, but holder shall remain liable for the costs of removal and site restoration.

36 C.F.R. § 251.60(i). The Forest Service argues that Western Radio failed to remove its facilities within the reasonable time allowed by the agency, and that such facilities now belong to the United States.

However, Western Radio filed suit to challenge the Forest Service's decisions in May 2014, before the Forest Service's deadline for removal of Western Radio facilities at the Gray Butte and Round Mountain sites and before the Forest Service affirmed the revocation of Western Radio's lease at Sugar Pine Butte. Aside from the facilities as Gray Butte, the Forest Service has not sought the removal of Western Radio's facilities. Further, even though the Forest Service sought preliminary injunctive

relief to require the removal of Western Radio's facilities at Gray Butte, the court declined to order such relief.

Therefore, even though Western Radio is in trespass, I do not find that its facilities have become property of the United States in these specific circumstances. Rather, the court is inclined to enter injunctive relief, affording Western Radio the opportunity to remove its facilities within a reasonable time frame as set forth by the Forest Service.

### 2. Unjust Enrichment Counterclaim

The Forest Service also seeks summary judgment on its counterclaim for unjust enrichment. The Forest Service alleges that by maintaining facilities at the telecommunications site without authorization, Western Radio has unjustly profited at the expense of the federal government. The Forest Service seeks $29,279.58 in fees that Western Radio would have been charged if it had obtained authorization to remain at the sites, as well as the disgorgement of profits it attained during that time.

Unjust enrichment is a theory of "quasi-contract" based on an implied contract. See Summer Oaks Ltd. P'ship v. McGinley, 183 Or. App. 645, 654, 55 P.3d 1100 (2002). The theory of unjust enrichment provides a remedy where no enforceable contract exists, and 1) one party has conferred a benefit on another, 2) the recipient is aware that a benefit has been received, and 3) "under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." Id. at 654.

22 - OPINION AND ORDER

I find that the Forest Service has established the elements of unjust enrichment against Western Radio. The permits and leases between the parties have expired or otherwise have terminated and no enforceable contracts exist. Nonetheless, Western Radio has remained at the sites without paying fees and continues to operate its facilities and receive revenue. Thus, Western Radio has received the benefit of remaining on the sites, despite the lack of authorization, and it is aware of such benefit. Under the circumstances, it would be unjust for Western Radio to retain this benefit.

According to the Forest Service, Western Radio owes the Forest Service $29.279.58 for the three sites in question, including fees for tenants who are Internet Service Providers (ISP). Perry Decl. Ex. D. The Forest Service provided evidence detailing the fees owed at each site, including "rental sheets" to calculate fees per tenant and customer of Western Radio. Id. Exs. A-C. Western Radio does not contest the Forest Service's calculations, and I find the amount to be supported with sufficient evidence. Therefore, Western Radio is ordered to pay $29,279.58 in fees it would have owed had it retained authorization to remain at the three sites. Further, I note that the fee calculations were submitted in July 2015, and that additional fees may be owed.

The Forest Service also seeks the disgorgement of monies paid to Western Radio by its customers and tenants during the time it operated without authorization, approximated to be $149,950.76. Burke Decl. Ex. A. The Forest Service contends that it is entitled to recover this income, because the structures and improvements at the communications

sites became property of the United States after Western Radio failed
to remove them. The Forest Service emphasizes that Western Radio should
not be allowed to retain the benefit of income obtained from its trespass
and disregard of federal law and regulations.

However, as explained above, I do not find that Western Radio's
facilities became property of the United States, as it challenged the
Forest Service's decisions before expiration of the removal deadlines
at Gray Butte and Round Mountain and before affirmance of the Sugar Pine
Butte lease revocation. Though I recognize the Forest Service's
frustration with Western Radio's unauthorized conduct, the revenue
received by Western Radio would not have gone to the Forest Service in
any event. I thus find no basis to disgorge the monies paid by tenants
with existing agreements as of the date Western Radio filed suit.

I find it a closer call with respect to any profit Western Radio
gained through its agreement with Sureline, given that Western Radio
entered into that agreement after receiving notice that it no longer
had authorization to operate at Gray Butte. At the same time, I declined
to grant the Forest Service's previous motion for injunctive relief to
cease Western Radio's operations as Gray Butte. As a result, it is not
appropriate to order Western Radio to disgorge those profits.

C.  **The Forest Service's Motion for Preliminary Injunction**

Finally, the Forest Service renews its motion for a preliminary
injunction requiring Western Radio to either shut down its facilities
at Gray Butte or to remove Sureline's equipment. The Forest Service
argues that Western Radio not only lacks authority to remain at Gray

Butte, but it has completely disregarded Forest Service regulations by allowing Sureline to install equipment and use frequencies that cause interference with other authorized site users.

In light of the court's finding that Western Radio has no authorization to maintain its facilities at Gray Butte, injunctive relief is appropriate. Not only has the Forest Service established success on the merits, its motion establishes Western Radio's continued disregard of the Forest Service's authority and irreparable harm to other users. Accordingly, Western Radio is ordered to remove Sureline's equipment from the Gray Butte site and cease its operations at Gray Butte immediately.

### CONCLUSION AND ORDER

The Forest Service's Motions for Summary Judgment and Preliminary Injunction (doc. 116, 119, 141) are GRANTED and plaintiff's Motion for Partial Summary Judgment (doc. 120) is DENIED. Pending final judgment in this case, Western Radio shall cease its operations at Gray Butte and remove Sureline's equipment from that site immediately. The Forest Service shall submit a proposed form of judgment and a supporting memorandum within 21 days from the date of this Order.

IT IS SO ORDERED.

Dated this 24 day of November, 2015.

Ann Aiken
United States District Judge

25 - OPINION AND ORDER